(44 Misc. Rep. 57.)

PHALEN v. UNITED STATES TRUST CO. et al.

(Supreme Court, Special Term, New York County.  June, 1904.)

1. WILL—CONSTRUCTION—ANTENUPTIAL AGREEMENT.

    The complaint alleged that testator, having a wife and son (the plaintiff) and two daughters, entered into an antenuptial agreement in 1873, two days before the marriage of plaintiff, that he and his wife would make no distinction between their children in disposing of their estate; that in 1882 testator made a will giving his residuary estate in trust to defendant to pay to his widow and each child the income of one-quarter of the estate for life, with power to defendant to advance each child the principal, except the sum of $50,000, which defendant was required to hold during the life of each child, and, on the death of such child, its share of the capital then held in trust was to be paid to the child's appointees by will, or, failing that, to his children, or, failing both, to the testator's next of kin.  The will also provided that, on the death of plaintiff, his wife should be paid so much of the principal of plaintiff's quarter share as would secure her the one-fourth of the estate to which she was entitled under the antenuptial agreement; that the share of the widow of the testator, since deceased, was on her death to be divided among the children; that in 1887, by a codicil, testator directed defendant to hold the plaintiff's share, except a house in Paris occupied by him for his life, pay him the income thereof, and at his death to divide the principal among his heirs; that the executors of the will accounted to the surrogate in 1890, and paid over the shares to defendant, who paid over to the daughters parts of their shares; that defendant refused to pay plaintiff any of the principal of his share, which was about $168,000, though payment of that amount, less the $50,000, had been demanded; that plaintiff is childless, and his sisters would be his only heirs.  *Held* that, as to plaintiff's share, the codicil was in violation of the antenuptial agreement.

2. SPECIFIC PERFORMANCE—PARTIES.

    In an action by a beneficiary to compel testamentary trustees to specifically perform an antenuptial contract made by plaintiff with testator, the executors of the will, who have been discharged, are not necessary parties.

3. RES JUDICATA.

    Where plaintiff, a testamentary beneficiary, claimed under an antenuptial contract with testator, the decree of the surrogate as to the distribution of a trust fund and the discharge of the executors of the will was not res judicata as to such contract, as over it the surrogate had no jurisdiction.

Action by Charles James Phalen against the United States Trust Company and others for specific performance.  Demurrer to complaint.  Overruled.

Frederick S. Woodruff, for plaintiff.

Edward W. Sheldon, for defendant trust company.

SCOTT, J.  This action was begun in February, 1904, for a specific performance of a contract made with the plaintiff by his father, James Phalen, and for other relief.  The material allegations in the complaint may be summarized as follows:

James Phalen, formerly of New York, died in Paris, France, January 20, 1887, leaving a will and seven codicils, which were thereafter proved in the New York county Surrogate's Court, and letters testamentary thereon issued to Edgar Lockwood and Florence,

Comtesse de Gabriac, the two executors therein named. The testator left, him surviving, his widow, Catherine S. Phalen, who has since died, and three children, the defendants Florence, Comtesse de Gabriac, and Catherine, Comtesse de Narbonne-Lara, and the plaintiff, Charles James Phalen, his only heirs and next of kin. On August 7, 1873, in contemplation of the plaintiff's marriage with one Julia de Zakrevsky, a written contract under seal was entered into at Baden-Baden, between the intending parties to such marriage, the father of Miss de Zakrevsky and the father and mother of the plaintiff, by which after various stipulations between the other parties, Mr. and Mrs. Phalen, the elder, respectively covenanted and agreed on their part that they would make no distinction between their children as regarded the proportion of their estates coming to each child under their respective wills. Relying upon this covenant, the plaintiff was married to Miss de Zakrevsky, August 11, 1873. On May 15, 1882, Mr. James Phalen made a will, by the ninth clause of which, among other things, he gave all his residuary estate to the defendant trust company in trust to divide into four equal parts, to hold one of those parts for the benefit of his widow during her life, and upon her death to transfer the principal of such one-fourth absolutely to the testator's children; to hold one other fourth part for the benefit of each of the three children, and to pay over to such beneficiary, as her or his absolute property, any part of the capital that she or he might, by an instrument in writing duly proved or acknowledged, require (saving the sum of $70,000, which amount, at least, was to remain in trust for the benefit of the child during her or his lifetime), and to pay to each child for life the income from the trust fund, or from so much thereof as remained in the trustee's hands. Upon the death of the child the capital of the fund then held by the trustee was to be transferred and paid as the child so dying might appoint by will, or, in default of appointment, to her or his children, or, failing both appointment and issue, to the testator's next of kin. With respect to the plaintiff's quarter share, it was specified that so much of the principal was on his death to be paid to his wife, Julia, as was necessary to secure her the one-fourth part of his estate to which she would be entitled under the marriage contract. In the tenth clause the testator provided that:

"It is further my intention and desire that all the stipulations by which I am bound in the marriage contracts of my children shall be fully and faithfully executed, anything in this will contained (if any such thing there be) to the contrary notwithstanding."

Six codicils to this will were thereafter made, dated, respectively, August 12, 1882, October 25, 1883, January 24, 1885, May 26, 1886, November 5, 1886, and December 31, 1886, which altered the foregoing provision for his three children to the extent only of reducing the minimum sum which should remain in trust for each child from $70,000 to $50,000 in St. Louis, Iron Mountain & Southern Railway Company general mortgage 5 per cent. bonds. The provision thus made for the plaintiff conformed to the terms of his marriage contract, and to the testator's obligations thereunder. But on January

17, 1887, three days before his death, the testator made the seventh and last codicil to his will, which is alleged to be in conflict with the above-recited stipulation in the marriage contract of his son. This codicil contained two clauses. By the first the testator gave the portion and property of the estate which by his will he had left to the plaintiff to the defendant trust company in trust to pay the income to or for the use and support of his son for life, and at his death to divide the principal among his heirs at law, except that the dwelling house occupied by the son in Paris should go to the son absolutely. The second clause of the codicil contained several small legacies to servants.

After the probate of the will the executors administered the estate, and by a decree of the Surrogate's Court, entered July 29, 1890, their accounts were judicially settled, the amount of the residuary estate and of the four shares thereof was determined, and the executors were directed to turn over such shares. to the defendant trust company, as trustee of the various trusts created by the will. The plaintiff, his wife, and all other persons interested in the estate, were parties to this accounting proceeding. The shares decreed to be held in trust for the plaintiff consisted of railway bonds and cash of the value of $168,184.82. By reason of the seventh codicil, the plaintiff's rights under the marriage contract were violated, to his damage in the exact amount of the difference between the value of the trust fund now held by the trustee and the $50,000 of St. Louis, Iron Mountain & Southern Railway bonds. The executors complied with all the terms of this decree. There is no further property of the estate in their hands, and they are discharged from all further liability. Mrs. Phalen, the testator's widow, has died, and her estate has been entirely distributed. The defendant trust company has, on the request of the testator's daughters, paid over to them parts of the principal of their shares of the residuary estate, but still holds the whole of the principal of the fund for the benefit of the plaintiff. The plaintiff has demanded of the defendant trust company that it turn over to him all of the principal of his share, except the $50,000 mentioned in the fifth codicil, but this demand has been refused. The plaintiff has no children, and his sisters, the individual defendants, would be his only heirs at law if he should die now.

Judgment is therefore prayed that the trust created by the seventh codicil be declared to be in violation of the plaintiff's rights under his marriage contract; that the plaintiff is entitled to the principal of the trust fund, after reserving the $50,000 in bonds therefrom; that the trust under the seventh codicil be. abrogated; that the remainders given thereby be extinguished; that it be declared that the defendant trust company holds the trust fund under the original will, as modified by the first six codicils, and be directed to turn over all of the fund, except $50,000 in bonds, to the plaintiff, and to continue to hold such $50,000 in accordance with the trusts declared in the ninth clause of the original will.

The defendant trustee has demurred to the complaint on two grounds: (1) That the complaint did not state facts sufficient to con-

stitute a cause of action; and (2) that to any action for damages for breach of contract Edgar Lockwood and Florence, Comtesse de Gabriac, the executors of the will of James Phalen, deceased, were necessary parties defendant.

The case of Colby v. Colby, 81 Hun, 221, 30 N. Y. Supp. 677, seems to be an authority for the maintenance of an action of this character. In order to enforce the agreement of James Phalen, incorporated into the marriage settlement, it is necessary that the seventh codicil to his will should be declared to be ineffective. An appeal to the equity side of the court is necessary, because the purpose of the action is to direct a trustee in the administration of the trust estate—a purpose which· is peculiarly one of equitable cognizance. The decree in the accounting proceeding is not res adjudicata of the plaintiff's rights, because his claim to be paid a part of the sum now held in trust for him was not within the jurisdiction of the surrogate. The plaintiff's right, if he has one, to withdraw a part of the trust fund from the hands of the trustee, is not to be found in the will, which the surrogate has power to construe for the purpose of making distribution, but upon an independent contract between the decedent and the plaintiff, upon the validity and effect of which the surrogate has no power to pass. His power and duty were exhausted when he found that the will and codicils were properly executed, and that under them the trustee was entitled to receive the funds set apart for plaintiff's benefit. If there had been a question arising on the will and codicils themselves as to the trustee's right to receive the fund, or as to the terms upon which it would be held, the surrogate's decree might be decisive; but the question as to the power of the testator, owing to an obligation dehors the will, to make a particular testamentary disposition of his property, could not have been raised before the surrogate, and, if attempted to be raised, could not have been passed upon. The plaintiff was not a creditor of the estate in the hands of the executors. The antenuptial agreement gave him no status as a creditor upon the accounting. Whatever right he has affects the duty of the trustee, not the duties of the executors. In any event, the trustee was entitled to receive the share of plaintiff and his sisters from the executors. It was the trustee, and not the executors, who were, under the ninth clause of the will, upon demand, to pay over a part of the principal. The plaintiff could not have asked the executors to pay over any part of the principal to him, and they could not have complied with any such request. Their sole and whole duty was performed when the fund had been paid over to the trustee. Whatever right plaintiff has to receive a part of the principal is a right to receive it from the trustee. The plaintiff therefore has not, and never has had, a cause of action against the executors, and they are not necessary parties defendant. I cannot escape the conclusion that the seventh codicil of the will was violative of the agreement contained in the eighth article of the antenuptial contract. The clear meaning of that agreement was that, in disposing of his estate by will, the testator would observe equality among his children. He need not have given any of them anything, but, so far as he gave anything, he bound himself to make no distinction between his children.

True, it was to be an equality of proportion, but also an equality of the proportion coming to them. In a narrow sense, nothing comes to either of them, so far as concerns the principal, except so much as they are permitted to withdraw from the trust, but I am not disposed to rest my decision upon that narrow construction. I prefer to stand upon the broader, and, as I think, safer, ground, that the testator's agreement was to treat all of his children alike. If the seventh codicil be enforced, it is clear that all are not treated alike. My conclusion, therefore, is that the seventh codicil, so far as it affects the plaintiff's share of the estate, is violative of the antenuptial contract, and is therefore void. Demurrer overruled, with costs, with leave to defendant to withdraw demurrer and answer within 20 days upon payment of costs.

Demurrer overruled, with costs, with leave to defendant to withdraw and answer within 20 days upon payment of costs.